Slip Op. 12–35

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GLOBAL COMMODITY GROUP LLC, | |
| Plaintiff, | |
| v. | Before: Gregory W. Carman, Judge |
| UNITED STATES, | |
| Defendant, | Court No. 11-00172 |
| - and - | |
| ARCHER DANIELS MIDLAND COMPANY, CARGILL, INC., and TATE & LYLE AMERICAS, LLC, | |
| Defendant-Intervenors. | |

## OPINION

[Sustaining the Department of Commerce's scope determination]

Dated: March 19, 2012

*George W. Thompson*, *Russell A. Semmel* and *Maria E. Celis*, Neville Peterson, LLP, of New York, NY, for Plaintiff.

*Carrie Anna Dunsmore*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. With her on the briefs were *Tony West*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, *Claudia Burke*, Assistant Director, and *Matthew D. Walden*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel.

*Neil R. Ellis* and *Jill Caiazzo*, Sidley Austin LLP, of Washington, DC for Defendant-Intervenors.

Court No. 11-00172                                                                                            Page 2

CARMAN, JUDGE: Plaintiff Global Commodity Group LLC ("GCG" or "Plaintiff") challenges a scope determination issued by the U.S. Department of Commerce ("Commerce") deciding that GCG's imported product falls within the scope of certain antidumping and countervailing duty orders on citric acid and certain citrate salts from the People's Republic of China.  (Compl. ¶ 1.)  For the reasons set forth below, Commerce's determination is sustained.

### BACKGROUND

In 2009, Commerce issued antidumping and countervailing duty orders on citric acid and certain citrate salts from the People's Republic of China ("the Orders").  <u>Citric Acid and Certain Citrate Salts From Canada and the People's Republic of China: Antidumping Duty Orders</u>, 74 Fed. Reg. 25,703 (May 29, 2009); <u>Citric Acid and Certain Citrate Salts from the People's Republic of China: Notice of Countervailing Duty Order</u>, 74 Fed. Reg. 25,705 (May 29, 2009).  The scope of each order is identical, and states, in relevant part, that the scope includes

> all grades and granulation sizes of citric acid, sodium citrate, and potassium citrate in their unblended forms, whether dry or in solution, and regardless of packaging type.  The scope also includes blends of citric acid, sodium citrate, and potassium citrate; as well as blends with other ingredients, such as sugar, where the unblended form(s) of citric acid, sodium citrate, and potassium citrate constitute 40 percent or more, by weight, of the blend.

74 Fed. Reg. at 25,703, 25,705.

GCG imported a product consisting of 35% citric acid of Chinese origin and 65%

Court No. 11-00172                                                                                          Page 3

citric acid originating from other countries, and on July 26, 2010 requested a determination from Commerce that this product falls outside the scope of the Orders. (Compl. ¶¶ 1, 4, 8–9.) GCG's theory was that this product was specifically excluded by the second clause of the second sentence of the scope language quoted above. That clause states that "blends [of citric acid] with other ingredients . . . where the unblended form(s) of citric acid . . . constitute[s] 40 percent or more, by weight, of the blend" are **included** within the scope of the order. 74 Fed. Reg. at 25,703, 25,705. GCG argued that (1) it had created a blend consisting of Chinese citric acid and other citric acid that was not subject to the Orders, (2) the unblended form of Chinese citric acid constituted less than 40 percent of the blend, and therefore (3) GCG's product should be **excluded** from the order by virtue of this clause. (Compl. ¶¶ 6, 8–9.)

      Commerce did not agree. First in a preliminary determination on March 7, 2011, and again in its final determination on May 2, 2011, Commerce concluded that the Chinese citric acid in GCG's product fell within the scope of the Orders. Specifically, Commerce rejected GCG's contention that it had created a "blend" of citric acid, as that term is used in the scope language, noting that the product, as imported, was "[f]unctionally and chemically . . . indistinguishable from citric acid that comes from a single source." <u>Citric Acid and Certain Citrate Salts: Final Deterimation on Scope Inquiry for Blended Citric Acid from the People's Republic of China and Other</u>

Court No. 11-00172 Page 4

Countries ("Final Determination") 5, P.R. 53, (May 2, 2011).  Because under the first sentence of the scope "all grades and granulation sizes of citric acid" are subject to the Orders, Commerce decided that the Chinese citric acid in GCG's product was encompassed by that language, and would be subject to the Orders.  (Id. at 6.)

## STANDARD OF REVIEW

In an action such as this, brought to contest a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order," the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. §§ 1516a(a)(2)(B)(vi), (b)(1)(B)(i).  The courts grant "significant deference to Commerce's own interpretation" of the scope of its antidumping and countervailing duty orders, Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1094–95 (Fed. Cir. 2002) (citing Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995)), but Commerce cannot change the scope of such orders through interpretation, nor interpret them in a manner contrary to their terms, Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001).

## ANALYSIS

Commerce's ultimate conclusion that the Chinese citric acid in GCG's product

should be subject to the Orders is relatively noncontroversial. GCG plainly acknowledges that its product contains Chinese citric acid, <u>see</u> Final Determination 6, <u>and</u> Compl. ¶ 1, and Chinese citric acid plainly falls within the first sentence of the scope language, which "includes all grades and granulation sizes of citric acid," 74 Fed. Reg. at 25,703. Rather, the locus of GCG's dispute with Commerce is whether its product is excluded from the scope of the Orders by the second clause of the second sentence. That dispute, in turn, hinges on whether Plaintiff's product is a blend, and specifically on whether non-subject citric acid must qualify as "other ingredients" within the meaning of that clause. GCG says yes, Commerce says no.

Plaintiff argues that "other ingredients" **can only** be interpreted as **any ingredients other than subject (i.e., Chinese) citrates**. (Pl.'s Rule 56.2 Mot. for J. upon the Agency R. ("Pl.'s Mot.") 11.) According to GCG, this interpretation is "compelled by the sentence structure." (Id.) If Plaintiff was correct, and citrates from non-subject countries qualified as "other ingredients," then GCG's product would be considered a blend, and it would be excluded from the scope because it contained less than 40% Chinese citric acid. (Id.) Commerce's decision, however, is that the phrase "other ingredients" does not mean any product other than *subject* citrates, but rather means non-citrate products. Final Determination 5–6. The issue presented to the Court is whether this determination by Commerce is supported by substantial evidence on the

Court No. 11-00172                                                                                      Page 6

record and otherwise in accordance with law.  The Court concludes that it is.

    Commerce's interpretation of the phrase "other ingredients" is not only permissible, it is eminently reasonable.  First, the conclusion that "other ingredients" refers to non-citrate products is supported by the plain language of the scope, which cites sugar (rather than a non-subject citrate) as an example of an "other ingredient[]".  74 Fed. Reg. at 25,703, 25,705.  Additionally, the Court regards Commerce's account of how this sentence came to be added to the scope as compelling.  Upon reviewing the description of the merchandise contained in the petition, Commerce noted that the scope originally included citrates in pure forms, but did not address citrates in blended forms.  Final Determination 5, see also 19 C.F.R. § 351.225(k) ("in considering whether a particular product is included within the scope of an order . . . [Commerce] will take into account the following: (1) The descriptions of the merchandise contained in the petition . . . .").  During the original investigation, Commerce queried petitioners about this gap, and petitioners proposed the language now found in the scope's second sentence.  Id.  On the basis of that history, Commerce concluded that the purpose of this sentence was to ensure that "something other than pure citrates, i.e., different citrates mixed with one another or with non-citrate products," were included within the scope of the Orders.  Id.

    Commerce's interpretation is therefore not contrary to the terms of the scope, nor

does it alter the language of the scope; it must be sustained in light of the significant deference to which Commerce is entitled in the interpretation of scope provisions.  See Eckstrom Indus., 254 F.3d at 1072; see also Duferco, 296 F.3d at 1094–95.  Accordingly, because GCG's product does not qualify as a blend, it cannot be excluded from the scope of the Orders on that basis.  Moreover, as noted above, because GCG's product plainly includes subject citric acid, Commerce's determination to assess antidumping duties on the portion of the product that is citric acid subject to the Orders is warranted.

## Conclusion

For the reasons set out above, the Court sustains Commerce's determination that GCG's product falls within the scope of the Orders.  Judgment will enter accordingly.

　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Gregory W. Carman　　　　
　　　　　　　　　　　　　　　　　　　　　　　Gregory W. Carman, Judge

Dated: March 19, 2012
　　　　New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GLOBAL COMMODITY GROUP LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>- and -<br><br>**ARCHER DANIELS MIDLAND COMPANY, CARGILL, INC., and TATE & LYLE AMERICAS, LLC,**<br><br>Defendant-Intervenors. | Before: Gregory W. Carman, Judge<br><br>Court No. 11-00172 |

## JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

**ORDERED** that Plaintiff Global Commodity Group LLC's motion for judgment on the agency record is denied and the challenged determination of Commerce is **SUSTAINED**.

    /s/ Gregory W. Carman
    Gregory W. Carman

Dated: March 19, 2012
    New York, New York